Puerto Rico Cap & Tires Sales Corporation, peticionaria, v. Tribunal de Distrito de San Juan, Hon. Emilio S. Belaval, Juez, demandado; Rolando Olivieri et al., representados por el Departamento del Trabajo, interventores.

Núm. 1728.—*Sometido:* Febrero 13, 1948. *Resuelto:* Marzo 15, 1948.

*Fernando B. Fornaris* y *Fernando Fornaris, Jr.,* abogados de la peti-
cionaria; *Ramón Cancio* y *Pedro Santana,* abogados del Depar-
tamento del Trabajo, como abogados de los interventores, deman-
dantes en los pleitos principales.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del
tribunal.

Rolando Olivieri radicó ante la Corte Municipal de San
Juan una demanda contra la Puerto Rico Cap & Tires Sales
Corporation y en ella alegó que estuvo en el empleo de la
demandada en calidad de Inspector General de Gomas,
desde el 22 de enero de 1945 hasta el 22 de octubre del mismo
año, por un sueldo convenido de $20.16 por semana; que el
contrato celebrado entre las partes no tenía tiempo fijo o
término de duración; y que el 22 de octubre de 1945 la de-
mandada sin justa causa o motivo justificado despidió de su
empleo al demandante, sin abonarle previamente la suma de
$80.64. Pidió se condenara a la demandada a pagarle la
indicada suma, o sea un mes de sueldo. Contestó la deman-
dada negando específicamente que el demandante fuera des-

pedido de su empleo sin justa causa o motivo justificado, alegando en contrario que el demandante cesó en su empleo por el único motivo de falta de trabajo y actividad en la planta de la demandada para seguir utilizando los servicios del demandante.

La Corte de Distrito de San Juan dictó sentencia a favor del demandante. No estuvo conforme la demandada e instó el presente recurso en solicitud de que la sentencia recurrida sea anulada.

La sección 1 de la Ley núm. 43 de 28 de abril de 1930 (pág. 357), según quedó enmendada por la Ley núm. 84 de 12 de mayo de 1943, pág. 197, dispone:

"Sección 1.—Todo empleado de industria o de cualquier otro negocio lucrativo, contratado sin tiempo determinado, *que fuere despedido de su cargo sin justa causa,* tendrá derecho a recibir de su patrono, en adición al sueldo que hubiere devengado, el sueldo correspondiente a un mes por concepto de indemnización; *Disponiéndose,* que las disposiciones de esta Ley no serán aplicables a los mancebos ni factores de comercio, para los cuales regirá lo dispuesto en el Código de Comercio." (Bastardillas nuestras.)

La única cuestión que tenemos que considerar y resolver es si "la falta de trabajo y actividad en la planta de la demandada para seguir utilizando los servicios del demandante" constituye la "justa causa" que autoriza al patrono a despedir a un empleado sin tener que pagarle el sueldo correspondiente a un mes por concepto de indemnización.

De la prueba ofrecida por el demandante resulta que cuando se le pagó al demandante la última semana le dijeron que quedaba despedido del trabajo hasta nuevo aviso, porque había poco trabajo; que cuando el demandante empezó a trabajar para la demandada, en enero de 1945, había en la fábrica cuarenta y un empleados, y cuando salió del empleo en octubre del mismo año quedaban alrededor de veinte o veinticinco. La demandada ofreció en evidencia

una carta fechada en 27 de octubre de 1947, dirigida por la Compañía al Presidente de la Unión de la Industria de la Goma, notificándole que por falta de trabajo y hasta nuevo aviso quedaban suspendidos diez obreros, entre los cuales figuraba el demandante Olivieri. Declaró el Superintendente de la Compañía que el único motivo que hubo para eliminar a esos obreros fué la falta de trabajo debido a la falta de gomas; que la Compañía tenía un contrato con el Ejército para "recapear" 1,700 gomas por mes, siendo ese contrato rescindible por el Ejército en cualquier momento; que en octubre 10 de 1945 el Ejército notificó a la demandada que el contrato no sería cancelado de momento sino que las pocas gomas que quedaban las enviarían para acabar de repararlas, pero que tan pronto recibieran gomas nuevas para cubrir sus necesidades el contrato quedaría cancelado; que la producción de la fábrica era un 70 por ciento para el Ejército y 30 por ciento para el público; que fué a fines del mes de octubre que se notó la merma en la producción de gomas. La prueba documental ofrecida por la Compañía demuestra que en el mes de septiembre de 1945 se recaucharon 1,768 gomas, siendo cuarenta y tres el número de empleados en ese mes; en octubre se repararon 1,610 gomas por 33 empleados; y en noviembre se repararon 762 gomas, siendo reducido el número de obreros gradualmente a medida que el trabajo disminuía, hasta el mes de marzo de 1946 en que el número de empleados quedó reducido a siete. Continuó declarando el Superintendente que la reducción de 43 a 7 en el número de obreros se debió exclusivamente a la falta de gomas por haberse levantado la restricción de la venta de las mismas; que a los obreros se les pagaba además de sus salarios un bono que se cargaba a gastos de operación y que era dinero que salía del bolsillo de la Corporación; y que la Compañía cerró su primer año de operaciones con una pérdida neta de $167.74.

Tanto nuestro Código Civil como el Español proveen que los trabajadores asalariados por cierto término para cierto obra "no pueden despedirse ni ser despedidos antes del cumplimiento del contrato, sin justa causa".

Nuestro Código Civil, artículo 1476 y el Código Civil Español, artículo 1586, proveen que los trabajadores asalariados por cierto término o para cierta obra, no pueden despedirse ni ser despedidos antes del cumplimiento del contrato, sin justa causa. La Ley núm. 84 de 1943, supra, hace extensivo ese derecho a los trabajadores contratados sin término fijo.

En sus Comentarios al artículo 1586 del Código Civil Español (Tomo X, 4ta. ed., pág. 668) dice Manresa:

"En cuanto a lo que debe entenderse por causas justificadas, el Código guarda silencio y su apreciación corresponderá a los Tribunales. Puede servir de criterio la doctrina de los artículos 21 y 22 del Código de Trabajo, aunque a los motivos que dicho Cuerpo legal enumera puedan añadirse otros que guarden analogía con ellos. Se estimarán justas causas a favor del patrono—dice el art. 21—para poder dar por terminado el contrato antes del plazo del vencimiento, las siguientes: 1ª. La falta repetida a las condiciones propias del contrato. 2º. La falta de la confianza debida en las gestiones o en la clase de trabajo a que se dedique el obrero. 3ª. Los malos tratamientos o la falta grave al respeto y consideración por parte del obrero al patrono, su familia, a su representante y a los compañeros de trabajo. . . .

"En la prohibición de despedirse y de dar la despedida sin justa causa del artículo 1,586, va implícita la obligación de indemnizar a la otra parte, aquella que caprichosamente ponga término al contrato. El Código no lo dice; pero, en realidad, no necesitaba decirlo, porque esa es una consecuencia del incumplimiento de lo pactado. La cuantía de la indemnización será fijada por los Tribunales. El rigor de los principios aconseja que una vez declarada caprichosa o injustificada la despedida, se considere como deudor de mala fe al que tiene que indemnizar; mas creemos, sin embargo, que los Tribunales procederán muy cuerdamente apartándose de ese rigorismo, y apreciando las circunstancias que concurran en el caso."

Como se ve, es a los tribunales de justicia a quienes incumbe, después de tomar en consideración los hechos y circunstancias especiales de cada caso, determinar si la despedida del trabajador estuvo justificada o si fué caprichosa o injustificada. La obligación de indemnizar al obrero que ha sido despedido del trabajo, cuando el contrato se hizo sin tiempo determinado, no es absoluta. Esa obligación surge cuando se le despide caprichosa e innecesariamente, sin una causa, razón o motivo que justifique el que el patrón prescinda de los servicios del obrero. La jurisprudencia citada por el obrero interventor[1] no es aplicable al caso de autos por referirse a casos en que el trabajador despedido había sido contratado por un término fijo o para una obra determinada.

No existe controversia en cuanto al hecho de que la causa que motivó la despedida del obrero interventor fué la falta de trabajo y actividad en la planta de la corporación demandada. No es ésa una causa que pueda ser calificada como caprichosa o injusta. Injusto sería obligar a un patrono cuya planta ha sido destruída por un incendio a pagar a todos sus empleados, a quienes ya no necesita, un mes de sueldo. Igualmente injusto sería obligarle a hacer ese pago, cuando por falta de materia prima para poder seguir trabajando el patrono se ha visto obligado a reducir el número de trabajadores o a cerrar su fábrica. El propósito del legislador ha sido proteger al trabajador en su derecho a continuar en su empleo y a no ser despedido caprichosamente o sea sin justa causa y sustituído por otro trabajador, siempre que el patrono continúe sus actividades y necesite los servicios del obrero. Véase: *Rodríguez* v. *Corte,* 65 D.P.R. 614.

*La sentencia recurrida será anulada y el caso devuelto a la corte inferior con instrucciones de dictar sentencia decla-*

---

[1] 35 Am.Jur. *Master and Servant,* sec. 40, págs. 473, 474; y 32 Am.Jur. 467, 468.

*rando sin lugar la demanda. Las sentencias dictadas en los casos civiles números 3013, 2968, 610, 611, 2865, 468, 474, 471, 560, 470, 556, 559, 555, 958, 475, 467, 469, 2969, 557, 472 y 558, que fueron vistos conjuntamente y fallados en la misma forma serán igualmente anuladas y los casos devueltos a la corte inferior con instrucciones de dictar sentencia en cada uno de dichos casos declarando sin lugar la demanda.*