**Randolfo RIVERA SANFELIZ, Plaintiff,**

v.

**THE CHASE MANHATTAN BANK, et al., Defendants.**

**No. CIV. 00–1485RLA.**

United States District Court, D. Puerto Rico.

Dec. 14, 2004.

---

4. *See,* Plaintiffs' Opposition (docket No. 43).

Carlos A. Bobonis–González, Esq., Bobonis, Bobonis & Rodriguez Poventud, San Juan, PR, Luis A. Meléndez–Albizu, Esq., Urb. San Francisco, San Juan, PR, for Plaintiff.

Ariadna Alvarez, Esq., Radamés A. Torruella–Del–Valle, Esq., McConnel Valdes, San Juan, PR, for Defendant/Respondent.

### ORDER DISMISSING CLAIMS UNDER LAW 80 AND FOR BENEFITS UNDER LONG–TERM INCENTIVE PLAN PURSUANT TO ERISA

ACOSTA, District Judge.

Codefendant THE CHASE MANHATTAN BANK, successor to THE CHASE MANHATTAN BANK, N.A. and codefendant THE CHASE MANHATTAN CORPORATION ("CHASE CORP."), collectively referred to as ("CHASE") have moved the Court to dismiss plaintiff's unjust dismissal cause of action as well as plaintiff's claim that Chase Corp.'s Long–Term Incentive Plan ("LTIP") is a plan covered by the provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 ("ERISA").

The Court having reviewed the memoranda submitted by the parties as well as the applicable law finds that dismissal of the two aforementioned causes of action is proper.

### FACTUAL BACKGROUND

Plaintiff, RANDOLFO RIVERA SANFELIS ("RIVERA") was a Chase employee in Puerto Rico.

In 1996, CHASE adopted The Chase Manhattan Corporation LTIP which provided stock option grants to certain employees, including RIVERA. LTIP was established pursuant to the Securities and Exchange Act of 1934. In compliance with Regulations issued by the Securities and Exchange Commission, LTIP's plan document expressly stated that it was not subject to ERISA. In 1997 and 1998, RIVERA was awarded stock option grants pursuant to LTIP.

In his Third Amended Complaint ("Complaint") (docket No. 4) RIVERA alleges that on April 21, 1998 CHASE informed him of the sale of its assets and operations in Puerto Rico to Banco Bilbao Vizcaya ("BBV"). CHASE advised that the going concern would not cease operating and that BBV would offer employment to some of its employees.

In 1998, during the conclusion of the transaction whereby CHASE would sell its Puerto Rico operations to BBV—but prior to regulatory approval of the transaction—CHASE employees were apprised of the agreement to sell. RIVERA was further notified that should he decline continued employment at BBV, he would be regarded as having resigned and not be entitled to exercise the stock option grants under LTIP which, under the terms of the plan, were forfeited upon resignation.

RIVERA was offered employment by BBV but he declined the offer. Instead, plaintiff obtained employment with First-Bank Puerto Rico and on or about June 1, 1998, resigned his employment at CHASE. As a result thereof CHASE declined RIVERA's request to exercise the stock option grants issued to him pursuant to LTIP alleging forfeiture on account of his resignation.

RIVERA claims that he rejected BBV's employment offer because it purportedly entailed a reduction in benefits, and because he did not want to start a relationship with a new employer that was not of his own choosing.

### THE COMPLAINT

Plaintiff has asserted a total of four causes of action as a result of the aforementioned facts.

In the first two RIVERA demands severance pay benefits under both Puerto Rico Act No. 80 of May 30, 1976, 29 Laws of P.R. Ann. § 185(f) ("Law 80")[1] and CHASE's ERISA-covered severance pay plan.[2] Specifically, RIVERA alleges that his imminent transfer to BBV constituted an involuntary termination and/or constructive discharge which entitles him to severance pay relief afforded under local law and ERISA.

Regarding his rights under LTIP RIVERA claims damages under Puerto Rico law. Further, he alleges that he is entitled to exercise his stock option grants under this plan pursuant to local contract law[3] or as a "claim for benefits" under ERISA's § 502(a)(1)(B).[4]

## DISPOSITIVE MOTIONS

CHASE filed a partial motion to dismiss the unjust dismissal claim asserted under Law 80 arguing that this state-provided remedy is pre-empted by ERISA under the particular circumstances of this case. CHASE further argues that even assuming Law 80 was applicable the Complaint does not contain any allegations to support a claim for constructive discharge.

Additionally, CHASE filed a partial summary judgment request seeking dismissal of the ERISA claim for stock option benefits on the grounds that the underlying plan under which those benefits were offered is not an ERISA plan.

### RULE 12(b)(6) STANDARD

Rule 12 (b)(6) of the Fed.R.Civ.P. allows the court to dismiss a complaint when it fails to state a claim upon which relief can be granted. Under Rule 12(b)(6), the court must take the allegations of the complaint as "true, and determine whether, under any theory, the allegations are sufficient to state a cause of action in accordance with the law". *Brown v. Hot, Sexy and Safer Productions,* 68 F.3d 525, 530, (1st Cir.1995). The court should not accept interpretations and unsupported conclusions of law, since the facts must be susceptible to any "objective verification". *Washington Legal Found., v. Massachusetts Bar Found.,* 993 F.2d 962 (1st Cir. 1993). According to this provision, the Court will base its determination solely on the material submitted as part of the complaint or central to it. *Fudge v. Penthouse Int'l Ltd.,* 840 F.2d 1012, 1015 (1st Cir. 1988). Documents on which a complaint depends and to which it refers merge "into the pleadings and the trial court can review [them] in deciding a motion to dismiss under rule 12(b)(6)." *Beddall v. State St. Bank & Trust Co.,* 137 F.3d 12, 17 (1st Cir.1998).

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Santiago Clemente v. Executive Airlines, Inc.,* 7 F.Supp.2d. 114 (D.P.R.1998); *aff'd,* 213 F.3d 25 (1st Cir. 2000).

Not every factual controversy bars access to summary judgment. The mere presence of some alleged factual conflicts among the parties will not defeat a proper

---

1. Complaint—First Cause of Action (docket No. 4) p. 10.

2. Complaint—Second Cause of Action (docket No. 4) p. 10.

3. Complaint—Third Cause of Action (docket No. 4) p. 12.

4. Complaint—Fourth Cause of Action (docket No. 4) p. 14.

motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir.1998); *Wadsworth, Inc. v. Schwarz-Nin*, 951 F.Supp. 314 (D.P.R.1996); *Preussag Int'l Steel Corp. v. Interacero, Inc.*, 951 F.Supp. 338 (D.P.R.1997).

The U.S. Supreme Court, in its leading case regarding the summary judgment standard, established that:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.

*Connell v. Bank of Boston*, 924 F.2d 1169, 1172 (1st Cir.1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

*Celotex* allows the movant to seek summary judgment based on the adverse party's failure to establish an element essential to its case and on which that party bears the burden of proof. The only requirement is that there be "adequate time for discovery."

"If the moving party demonstrates that there is an absence of evidence to support the non-moving party's case, the burden shifts to the non-moving party to establish the existence of a genuine material issue." *J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1251 (1st Cir.1996), *cert. den.*, 519 U.S. 823, 117 S.Ct. 81, 136 L.Ed.2d 39 (1996). An issue is genuine if it "must be decided at trial because the evidence, viewed in the light most flattering to the non-movant, would permit a rational fact finder to resolve the issue in favor of either party." *Remington Inv., Inc. v. Quintero & Martínez Co.*, 961 F.Supp. 344, 350 (citing *Mulero-Rodríguez v. Ponte, Inc.*, 98 F.3d 670, 673 (1st Cir.1996)).

On the other hand, if "the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation," *Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 535 (1st Cir. 1996), then the court must grant summary judgment in favor of the moving party. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Landrau Romero v. Caribbean Restaurants, Inc.*, 14 F.Supp.2d 185, 188 (D.P.R.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

## LAW 80 CLAIM

■ Section 514(a) of ERISA provides that: "...the provisions of this subchapter and subchapter III of this chapter **shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan**..." 29 U.S.C. § 1144(a) (emphasis added). The term "State Law" includes all the laws, decisions, rules, regulations, or other state actions having the effect of law of any State. 29 U.S.C. § 1144(c)(1).

The U.S. Supreme Court has construed the above cited section as **covering a law that "'relates to' an employee benefit plan..., if it has a connection with or reference to such a plan."** *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (emphasis added).

In this regard, it has been stated that: Because ERISA applies to the benefit plans at issue here, plaintiffs' state law claim for benefits under the plans is preempted. 29 U.S.C. § 1144(a). The Supreme Court has held that ERISA's

"preemptive force 'is so powerful as to displace entirely any state cause of action...'" *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 44, 107 S.Ct. 1549, 1551, 95 L.Ed.2d 39 (1987) (quoting *Franchise Tax Bd. v. Construction Laborers Vac. Trust*, 463 U.S. 1, 23, 103 S.Ct. 2841, 2853, 77 L.Ed.2d 420 (1983)) ("the [ERISA] preemption clause is conspicuous for its breadth"). **Section 1144(a) of ERISA has the effect of preempting any state statute dealing with benefit plans covered under ERISA "even if the law is not specifically designed to affect such plans, or the effect is only indirect."** *District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992).

*Cintrón Parrilla v. Lilly Del Caribe, Inc.*, 32 F.Supp.2d 35, 37 (D.P.R.1998) (emphasis added).

The Complaint alleges at ¶ 27 that CHASE's severance plan "qualifies as an 'employee welfare benefit plan' under ERISA Section (3)(1), 29 U.S.C. § 1002(1)".[5]

CHASE's ERISA covered severance plan offers the same type of benefits as Law 80 (severance pay upon termination of employment) and establishes the requirements to qualify for the benefit, the amount of the benefit, the way in which the benefit will be paid, among others. Compelling CHASE to pay severance benefits under Law 80 would force it to pay benefits under different circumstances, or in a different amount or form, than what is provided by CHASE's ERISA covered severance plan. This would cause CHASE to offer inconsistent severance benefits to employees in different states in which the corporation conducts operations, which is precisely what ERISA's preemption provisions intend to avoid. Consequently, a claim for severance pay under Law 80 such as RIVERA's—which is a demand by an employee to his employer who has in place an ERISA covered severance plan—relates to an ERISA plan, and is thus preempted.

Furthermore, by asserting severance benefits under Law 80, RIVERA is clearly attempting to use an alternate enforcement mechanism under state law to remedy a claim that falls within the scope of federal ERISA law. *See e.g., Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1 (1st Cir.1999) (to establish ERISA preemption, defendant must show that the state cause of action falls within ERISA's civil enforcement provision; for this to occur, state law must be characterized as "alternative enforcement mechanism" of the terms of an ERISA plan); *Tobin v. Nadeau*, No. Civ. A.03–11817–DPW, 2004 WL 1922134 (D.Mass. Aug.30, 2004), citing *Danca, supra,* (court denied request to remand state law claim that "fit squarely" under ERISA Section 510, because the state law claim was an alternate enforcement mechanism under state law to remedy a claim under ERISA.)

RIVERA's Law 80 claim seeks severance pay through a mechanism alternate to CHASE's ERISA covered severance plan which was established precisely for

---

5. Inasmuch as the Court must take as true the allegations in the Complaint when ruling on a motion to dismiss, we shall accept plaintiff's assertions that the severance plan at issue is an ERISA covered plan. Further, the Questions and Answers included as Exhibit 5 to the Complaint, which summarize certain severance plan provisions, clearly show that the plan provides more than a one-time payment. It allows for payment of the benefit in bi-weekly installments, and also includes options to continue medical, dental and life insurance coverage, all of which would require an ongoing administrative scheme, and would cause the plan to be covered by ERISA.

the purpose of paying severance benefits and as such, is preempted by ERISA. RIVERA's entitlement to severance benefits can only be determined under the terms of CHASE's ERISA covered severance plan.[6]

Accordingly, plaintiff's claim for Law 80 benefits is **DISMISSED** as preempted by ERISA.

## LTIP IS NOT AN ERISA PLAN

ERISA allows a civil action by a participant or beneficiary to **"recover benefits due, or to enforce rights, under the terms of an ERISA covered plan...."** 29 U.S.C. § 1132(a)(1)(B) (emphasis added). To determine if a benefit scheme provided by an employer is an ERISA covered plan, two things need to be determined. First, the benefits scheme must be a plan. Second, the plan must be covered by ERISA. If these two conditions are met, the participant or beneficiary will have standing to claim benefits under ERISA's civil enforcement provision.

■ A plan exists when the benefits scheme offered by the plan sponsor allows the following to be identified: (1) the intended benefits; (2) the intended beneficiaries; (3) the source of financing; and (4) the procedure for obtaining benefits.

*Donovan v. Dillingham,* 688 F.2d 1367 (11th Cir.1982) (*en banc*). The *Dillingham* test has been adopted by this circuit. *See, Demars v. CIGNA Corp.,* 173 F.3d 443, 445 (1st Cir.1999); *Belanger v. Wyman–Gordon Co.,* 71 F.3d 451, 455 (1st Cir.1995).

■ A plan is covered by ERISA if it: (a) provides welfare or pension benefits;[7] (b) is not excluded under ERISA's "safe harbor provision"; and (c) is "established or maintained" by an "employer" engaged in interstate commerce intending to benefit employees. Absence of any of these elements will preclude ERISA coverage. *Meredith v. Time Ins. Co.,* 980 F.2d 352, 355 (5th Cir.1993). Finally, an ERISA covered plan must also have an ongoing administrative scheme. *Rodowicz v. Massachusetts Mut. Life Ins. Co.,* 192 F.3d 162, 170 (1st Cir.1999).

■ As stated in the Complaint and confirmed by CHASE in its motion for partial summary judgment, by its own definition, LTIP is not an employee benefit plan subject to the provisions of ERISA. Rather, LTIP was established pursuant to the provisions of the Securities and Exchange Act of 1934 with the purpose of providing stock options to certain employ-

**6.** Because we find the Law 80 claim preempted, there is no need for the Court to entertain RIVERA's allegations that his resignation was tantamount to a constructive discharge. Further, it should be noted that this Court is not persuaded by RIVERA's argument that his resignation amounts to a constructive discharge because he was not offered equal benefits by BBV or because he did not choose BBV as his employer. Even taking all of the allegations of the Complaint as true, it does not appear, and RIVERA has not even alleged, that CHASE engaged in unjustified acts intended to force him to abandon his position, nor has he claimed that his working conditions were so intolerable that the only reasonable alternative for him was to resign from his employment. Not being happy with an

employer does not a constructive discharge make. *See generally, Greenberg v. Union Camp Corp.,* 48 F.3d 22, 27 (1st Cir.1995); *Stetson v. NYNEX Serv. Co.,* 995 F.2d 355, 360–361 (2nd Cir.1993); *Vélez de Reilova v. R. Palmer Bros., Inc.,* 94 D.P.R. 175 (1967).

**7.** A plan is covered by ERISA if it is either a welfare benefit plan or a pension benefit plan or a plan which is a combination of both. 29 U.S.C. § 1003(3). ERISA does not cover plans that are neither welfare nor pension plans. *See generally, Inter–Modal Rail Employees Ass'n v. Atchison, Topeka & Santa Fe Ry. Co.,* 520 U.S. 510, 117 S.Ct. 1513, 137 L.Ed.2d 763 (1997).

ees. LTIP expressly states that it was not instituted pursuant to ERISA.

Apart from the LTIP's unequivocal declaration of exclusion from ERISA coverage this Court finds that in substance, LTIP also fails to meet the legal standard necessary to bring it under ERISA's ambit. As will be further discussed: (a) LTIP provides no benefits (the employees have to purchase the stock, it is not given to them); (b) it does not establish a funding mechanism (presumably because it does not grant any funds), and (c) having no custody of funds, it obviously does not require an administrative scheme to administer or disburse the non-existent funds. In sum, LTIP is nothing more than a mechanism to facilitate an employee's purchase of company stock.

### (a) *LTIP does not provide welfare or pension benefits.*

Stock option plans similar to LTIP (which do not provide medical, surgical or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment) have been found not to fall under the definition of a welfare plan since they do not provide the type of benefits a welfare plan contemplates. *Goodrich v. CML Fiberoptics, Inc.*, 990 F.Supp. 48, 50 (D.Mass.1998), citing *Murphy v. Inexco Oil Co.*, 611 F.2d 570, 575 (5th Cir.1980).

Further, LTIP is also not a pension plan since it is not designed to provide retirement income, even if some payments under LTIP might occur after retirement. *Oatway v. Am. Int'l Group, Inc.* 325 F.3d 184 (3rd Cir.2003); *Williams v. Wright*, 927 F.2d 1540, 1546–47 (11th Cir.1991).

Finally, payments made by an employer as bonuses for work performed (such as those provided by LTIP) are not considered pension plans, unless such payments are systematically deferred to the termination of covered employment or beyond, or as to provide retirement income for employees. *See*, 29 C.F.R. § 2510.3.2(c); *Murphy v. Inexco Oil Co.*, 611 F.2d at 575 (discretionary contributions in recognition of special service, awarded in addition to regular compensation does not result in a deferral of income).

### (b) *LTIP does not establish a source of financing*

LTIP does not have a trust or funding mechanism. The absence of a source of financing responds to the fact that this program does not make any disbursement or payment of benefits, and therefore, has no money or assets to hold in trust. The program simply establishes a mechanism for employee's to purchase CHASE stock.

### (c) *LTIP does not contain an administrative scheme.*

LTIP does not require Chase to undertake "a host of obligations, such as ... calculating benefit levels, making disbursements, monitoring the availability of funds for benefit payments, and keeping appropriate records in order to comply with applicable reporting requirements." *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 9, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). Federal Courts have found stock option plans not to require this type of ongoing administration, and consequently, not covered by ERISA. *Kaelin v. Tenneco, Inc.*, 28 F.Supp.2d 478, 487 (N.D.Ill. 1998).

Because LTIP provides no benefits, has no source of financing, and does not contain an administrative scheme we find that it is not an ERISA plan. Therefore, ERISA remedies elude LTIP participants. Based on the foregoing, RIVERA's claim for LTIP benefits is, therefore, **DISMISSED**.

### CONCLUSION

Based on the foregoing, CHASE's Partial Motion to Dismiss Unjust Dismissal

**248**

Claim (docket No. 14)[8] is **GRANTED** and plaintiff's FIRST CAUSE OF ACTION claim for Law 80 benefits is **DISMISSED**.

It is further ORDERED that CHASE's First Motion Requesting Partial Summary Judgment (docket No. 21)[9] is **GRANTED** and plaintiff's FOURTH CAUSE OF ACTION claim for LTIP benefits under ERISA is **DISMISSED**.

Partial Judgment shall issue.

IT IS SO ORDERED.

### *PARTIAL JUDGMENT DISMISSING CLAIMS UNDER ACT 80 AND FOR BENEFITS UNDER LONG–TERM INCENTIVE PLAN PURSUANT TO ERISA*

The Court having dismissed plaintiff's claims for severance benefits under Puerto Rico Act 80 and his ERISA § 502(a)(1)(B) claim for stock option benefits under defendants' Long–Term Incentive Plan through its Order issued on this date, it is hereby

ORDERED and ADJUDGED that plaintiff's claims for severance pay under Act 80 and claims under the defendants' Long–Term Incentive Plan pursuant to ERISA are **HEREBY DISMISSED WITH PREJUDICE.**

IT IS SO ORDERED.

---

8. See also, Opposition (docket No. 17) and Reply (docket No. 23).

9. See also, Opposition (docket No. 38) and Reply (docket No. 41).